IN THE UNITED STATES FEDERAL DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBYN J. DENNISON<br>1164 Wick Avenue<br>Ashland, OH  44805 | )<br>)<br>) | CASE NO:<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | **COMPLAINT FOR MONEY AND DECLARATORY JUDGMENT** |
| vs. | )<br>) | **JURY DEMAND** |
| PACKAGING CORPORATION OF AMERICA<br>c/o CT Corporation System, Agent<br>4400 Easton Common Ways, Suite 125<br>Columbus, OH  43219 | )<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff Robyn J. Dennison ("Robyn Dennison") hereby states her causes of action against the Defendant as follows:

**Parties, Jurisdiction, and Venue**

1. Plaintiff Robyn Dennison resides in and is a citizen of Ohio.

2. At all times relevant herein, Defendant Packaging Corporation of America ("PCA") is a corporation and/or other business entity organized under the laws of Delaware that has its principal place of business in Illinois and is a citizen of those states.

3. At all times relevant herein, Defendant PCA transacts business in Ohio.

4. Jurisdiction and venue are proper in this Court pursuant to 28 USC § 1332 because the parties involved are citizens of different states, the amount in controversy exceeds $75,000, and the events leading to the causes of action took place at Defendant PCA's facility in Ashland County, Ohio.

1

**Facts Common to All Causes of Action**

5.     Plaintiff repeats every allegation contained in the preceding paragraphs as if fully rewritten herein.

6.     Defendant PCA is primarily in the business of production of corrugated cardboard box products for the packaging and shipping industry.

7.     Defendant PCA had approximately 13,000 employees between 95 locations.

8.     Defendant PCA owns and operates a facility located at 929 Faultless Drive, Ashland, Ohio.

9.     Defendant PCA has approximately 180 employees at its Ashland, Ohio facility.

10.    Defendant PCA owned and operated a machine known as the 501 Automatan Labeler ("501 Labeler") at its Ashland facility.

11.    The 501 Labeler was installed in 2005 and is electronically powered and actuated by push button.

12.    The 501 Labeler meshes a label and a corrugated cardboard blank with glue to make solid adhesion before going to a die cutter or folder glue machines.

13.    The corrugated blanks feed in on a conveyor line up to an Extendo conveyor that automatically loads the blanks onto the conveyor up to an arm that spreads the blanks out evenly and automatically feeds the blanks into the 501 Labeler's infeed.

14.    The infeed then aligns the blanks to make sure they are pulled into the feed rollers appropriately where they are automatically pulled through the machine where the pre-glued label is adhered to the corrugated blank.

15. The Original Equipment Manufacturer (OEM) guard that came on the 501 Labeler went across the feed roll section and left space for the product to enter.

16. The OEM guard on the 501 Labeler protected employees who were working on or around the machine from injury from a pinch point but permitted corrugated blanks that were being used for production of single wall cardboard boxes to feed into the machine.

17. A pinch point refers to a dangerous area where a part of the body may get caught between stationary and moving parts.

18. The OEM guard on the 501 Labeler complied with OSHA regulations and other safety standards and regulations concerning guarding of pinch points.

19. However, <u>after</u> the installation of the 501 Labeler and <u>before</u> October 20, 2023, the day Plaintiff Robyn Dennison was seriously injured, Defendant PCA, by and through its employees and/or agents, removed the OEM guard that was designed to protect workers like Plaintiff Robyn Dennison from pinch points.

20. Specifically, <u>after</u> the installation of the 501 Labeler and <u>before</u> Plaintiff Robyn Dennison's injury on October 20, 2023, Defendant PCA altered the OEM guard and widened the pinch point that was being guarded.

21. This was done by Defendant PCA to allow for thicker corrugated blanks to feed into the machine as thicker corrugated blanks were needed for the production of double wall cardboard boxes.

22. Maintenance workers at Defendant PCA altered the OEM guard on the 501 Labeler, increased the pinch point gap to one inch, and consequently exposed employees to a dangerous pinch point.

23. Defendant PCA's actions before October 20, 2023 made the OEM guard no longer compliant with OSHA regulations and other safety standards and regulations concerning the guarding of pinch points.

24. Defendant PCA, by and through its employees, knew or should have known that its conscious decision to change the OEM guard of the pinch point was dangerous and was a violation of OSHA regulations and other safety standards and regulations.

25. Defendant PCA, by and through its employees, had prior knowledge that employees who were working on labeler machines could be injured by pinch points because a different employee who was also a label helper like Plaintiff Robyn Dennison suffered a laceration to that employee's right hand on September 23, 2020 while working with a similar label machine.

26. At all times relevant, Plaintiff Robyn Dennison was an employee of Defendant PCA.

27. On October 20, 2023, a supervisor told Plaintiff Robyn Dennison to climb up on the platform and work on the 501 Labeler and work near the unguarded pinch point.

28. The 501 Labeler was not shut down and locked out while Plaintiff Robyn Dennison was working near the unguarded pinch point.

29. Before October 20, 2023, Defendant PCA knew or should have known that operators of the 501 Labeler had complained about getting shocked and/or electrocuted while operating the machine.

30. Before October 20, 2023, Defendant PCA knew or should have known that operators of the 501 Labeler were told to wear rubber gloves while operating the machine because of the problems with operators getting shocked and/or electrocuted.

31. On October 20, 2023, before Plaintiff Robyn Dennison was injured, maintenance workers at Defendant PCA were working on the 501 Labeler for several hours pursuant to work orders that had been submitted by employees.

32. In the process of working on the 501 Labeler, Plaintiff Robyn Dennison felt like she was being shocked and/or electrocuted and her left hand touched the 501 Labeler, her left hand got caught in the unguarded pinch point of the machine, and her hand and arm started to be pulled into the moving parts of the 501 Labeler.

33. Plaintiff Robyn Dennison tried to free herself, but the pinch point of the 501 Labeler pulled her left hand into the moving parts of the machine and amputated fingers and ripped flesh off of her hand and fingers.

34. She called for help, and the 501 Labeler was ultimately shut down.

35. 911 was called for help and Plaintiff Robyn Dennison was taken to the hospital for medical treatment.

36. Plaintiff Robyn Dennison suffered serious injuries, and three fingers on her left hand were amputated.

37. At all times relevant herein, Plaintiff Robyn Dennison was instructed, trained, required, directed, assignment, requested, allowed, supervised, shown, told, expected and/or encouraged by Defendant PCA (by and through its owners, managers, supervisors, and/or other personnel who had the right to direct and control Plaintiff Robyn Dennison) to perform work activities near the unguarded pinch point of the 501 Labeler.

38. One of Plaintiff Robyn Dennison's job duties and/or task at Defendant PCA included working on a platform near the unguarded pinch point while the 501 Labeler was operating.

39. During this task, Plaintiff Robyn Dennison was working dangerously close to the unguarded pinch point of the 501 Labeler.

40. Defendant PCA (by and through its owners, managers, supervisors, and/or other personnel who had the right to direct and control Plaintiff Robyn Dennison) had prior knowledge that workers were being asked to work near the unguarded pinch point of the 501 Labeler while it was running.

41. Before Plaintiff Robyn Dennison was injured, Defendant PCA knew that the OEM guard of the pinch point had been changed and/or modified and that the gap of the pinch point had been widened to allow thicker corrugated blanks to feed into the machine, thus creating a dangerous condition.

42. Thus, on the day Plaintiff Robyn Dennison was injured, the pinch point on the 501 Labeler was not guarded as required by federal safety regulations and/or state safety regulations and/or industry safety standards.

43. Despite this prior knowledge of the dangerous condition, Plaintiff Robyn Dennison was trained and taught to complete this task in the manner she was working on the day she was seriously injured.

44. Before Plaintiff Robyn Dennison was injured on October 20, 2023 Defendant PCA (by and through its owners, managers, supervisors, and/or other personnel who had the right to direct and control Plaintiff Robyn Dennison) knew or should have known the following as it relates to this dangerous condition within its business operation:

   A. Employees were working on or near the pinch point of the 501 Labeler while the machine was running.

6

    B.  The OEM guard had been altered in a manner that the pinch point was now as wide or wider than one inch and created a large gap and dangerous condition.

    C.  Federal safety regulations and/or state safety regulations and/or industry safety standards require pinch points on machines like the 501 Labeler to be guarded.

    D.  Section 5(a)(1) of the Occupational Safety and Health Act of 1970 required Defendant PCA to furnish a place of business which was free from recognized hazards that were causing or are likely to cause death or serious physical harm.

    E.  And other facts establishing Defendant PCA had knowledge of the existence of a dangerous machine and dangerous condition within its business operation.

45. Despite this knowledge, Defendant PCA failed to comply with the applicable federal, state and industry safety standards in an effort to prevent injuries to workers who would be working near pinch points on machines like the 501 Labeler.

46. Before Plaintiff Robyn Dennison was injured, Defendant PCA knew that if workers were subjected to the above-mentioned dangerous machine and dangerous condition, then it was substantially certain that harm to those workers would take place.

47. Despite knowledge of the above-mentioned facts concerning the dangerous machine and dangerous condition, Defendant PCA still required workers like Plaintiff Robyn Dennison to work near the dangerous machine and dangerous condition involved in this incident.

48. After Plaintiff Robyn Dennison was injured because of this incident, Defendant PCA was issued citations by The U.S. Department of Labor's Occupational Safety and Health Administration for violating various federal safety regulations and OSHA recommended fines be assessed against Defendant PCA.

7

49. <u>Before</u> Plaintiff Robyn Dennison was injured, Defendant PCA had been issued citations by the U.S. Department of Labor's Occupational Safety and Health Administration for violating various safety regulations and OSHA recommended fines be assessed against Defendant PCA.

**Count I – Employer Intentional Tort Claim Against Defendant PCA**

50. Plaintiff repeats every allegation contained in the preceding paragraphs and incorporates the same herein as though fully set forth.

51. For the reasons set forth above and other facts that will be learned during discovery, Defendant PCA intentionally injured Plaintiff Robyn Dennison as defined by and in violation of R.C. § 2745.01 and Ohio case law.

52. For the reasons set forth above and other facts that will be learned during discovery, Plaintiff Robyn Dennison is entitled to the rebuttal presumption of an "intent to injure" that is afforded to Plaintiff under R.C. § 2745.01(C). Specifically, Plaintiff is entitled to this presumption because Defendant PCA removed a guard that was previously being used to guard the pinch point on the 501 Labeler and keep employees from coming into contact with the pinch point.

53. As a direct and proximate result of the tortious conduct of Defendant PCA described above, Plaintiff Robyn Dennison suffered serious injuries (e.g., amputation of three fingers on her left hand, etc.) and suffered substantial noneconomic and economic damages, both in the past and in the future.

**Count II – Declaratory Judgment Action Against Defendant PCA**

54. Plaintiff repeats every allegation contained in the preceding paragraphs and incorporates the same herein as though fully set forth.

55. Plaintiff Robyn Dennison was in the course and scope of her employment with her employer when she was injured and, consequently, she has received workers' compensation benefits.

56. Defendant PCA is self-insured for workers' compensation and has paid out money to Plaintiff Robyn Dennison pursuant to a statutory obligation to provide workers' compensations benefits (medical, indemnity payments, etc.) and will continue to do so in the future.

57. A dispute and controversy exists between Plaintiff Robyn Dennison and Defendant PCA that needs to be decided by the Court concerning whether Defendant PCA is entitled to enforce any subrogation right and/or right to reimbursement and recover any of the money it paid out to Plaintiff both in the past or into the future, from Plaintiff's recovery from Defendant PCA pursuant to the employer intentional tort claim pursued in this case.

 WHEREFORE, Plaintiff Robyn Dennison demands judgment against Defendant PCA in an amount which exceeds Seventy-Five Thousand Dollars ($75,000.00), interest, the costs of this action, and all other relief to which Plaintiff is entitled.

 WHEREFORE, Plaintiff Robyn Dennison demands that the Court issue an order declaring the rights and obligations of Plaintiff and Defendant PCA regarding the enforcement of any subrogation interest or right to reimbursement related to payments made by Defendant PCA to Plaintiff; payments made on her behalf; or any other relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ R. Craig McLaughlin

_____
R. Craig McLaughlin (0068765)
Elk & Elk Co., Ltd.
6105 Parkland Boulevard
Mayfield Hts., Ohio 44124
Phone:  (440)442-6677
Facsimile: (440) 442-7944
E-mail: rmclaughlin@elkandelk.com
*Attorney for Plaintiff*

**Jury Demand**

Plaintiff demands a trial by jury.

/s/ R. Craig McLaughlin

_____
R. Craig McLaughlin (0068765)

10